IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.  Criminal No. 2:21-00159

**ALEXANDER V. OTELLIN, M.D.**

### DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Alexander Otellin, M.D., by his counsel, and submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his sentencing hearing. For the reasons set forth below, Dr. Otellin requests a sentence below the advisory guideline range of 30-37 months.

### I. BACKGROUND

Alexander Otellin was born in 1967 in the former city of Leningrad, U.S.S.R., now known as St. Petersburg, Russia. His upbringing was decidedly middle class. His family had what they needed, and they lived modestly in an apartment. Dr. Otellin's parents worked in the medical profession and were also attentive to both him and his sister. The family had access to state-sponsored cultural and artistic outings, such as going to museums, as well as travel.

From an early age, he wanted to follow his parents' footsteps. His mother is a retired radiologist. His father, who passed away in 2022, was a doctor who focused on research. This exposure to the profession led him to obtain his doctorate degree in 1989, and to finish an internship in pediatrics in 1995. Even his military service was focused on the same profession, as he served as a lieutenant in the Russian Medical Reserve.

After completing his medical education in Russia, Dr. Otellin aspired to live and work in the United States. He left Russia and began pursuing his American medical education, completing a surgical internship in New Jersey in 2003. Next, in 2006, he completed a residency in psychiatry at West Virginia University School of Medicine here in Charleston. He opened his own psychiatry practice at Thomas Memorial Hospital in South Charleston, which stayed open for over 10 years.

Dr. Otellin has a grown daughter from his first marriage who lives in Russia. His next marriage lasted eight years before they split up. It was his final marriage, to his wife, Inna Otellin, whom he lived with in Charleston, that lasted 20 years. The couple had one child together, Lilly, the joy of his life who is now 15 years old. Despite repeated attempts to reach his family, he has not spoken to his ex-wife or daughter in over two years.

He has suffered from varying levels of depression since he was a young man. He is currently being treated with medication and counseling, and wants to continue treatment through the Bureau of Prisons. Additionally, he is prescribed medication to maintain healthy blood pressure. He has lingering pain from a 2009 shoulder dislocation, has been diagnosed with narcolepsy, and was previously prescribed a CPAP machine for sleep apnea. He will require a medical examination through the Bureau of Prisons to determine further medical treatment.

Dr. Otellin has accepted full responsibility for his conduct, recognizing the harm it caused. He voluntarily surrendered his West Virginia Medical License. Pursuant to a plea agreement, he pled guilty to unlawful distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1). The presentence report has been drafted and revised, and there are

no outstanding objections. With no criminal history points, he has a Criminal History Category of I, and the corresponding advisory guideline range is 30-37 months. Dr. Otellin requests a sentence below that advisory range.

## II.   SENTENCING FACTORS

In post-*Booker* sentencing, district courts calculate the Guideline, consider that range in conjunction with other relevant factors under 18 U.S.C. § 3553(a), and impose a sentence. In this case, a sentence below the advisory Guideline range would be sufficient, and not greater than necessary, based on the following:

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

The instant offense resulted from an investigation of Dr. Otellin that led to the issuance of a search warrant and ultimately his arrest. His criminal history and the seriousness of his conduct are adequately reflected in the advisory Guideline range of 30-37 months. However, that range does not account for the history and characteristics of Dr. Otellin, including the absence of criminal history, the family and friends that have been supporting his rehabilitation, and the fact that this is his first felony conviction.

The sentence should also account for the years of medical practice without incident, and his military service, which he also dedicated to the practice of medicine. Finally, a downward variance will account for his acceptance, his remorse, and his focus on rehabilitating himself to use the time he has left to help others. Most importantly to Dr. Otellin, he would like the opportunity to dedicate himself to finding his daughter and renewing their relationship upon release.

Taking these factors together along with the additional factors set forth below and as will be spread on the record at the sentencing hearing, a downward variance is warranted.

**(2) The need for the sentence imposed to:**
   **a. Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;**
   **b. Afford adequate deterrence to criminal conduct;**
   **c. Protect the public from further crimes of the defendant; and**
   **d. Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Even a downward variance will result in a severe sentence that will promote respect for the law and provide just punishment. Furthermore, the Court's ultimate sentence will be sufficient to deter others from committing similar crimes, as empirical studies have demonstrated that it is the certainty of receiving punishment, not the severity of the punishment received, that most effectively deters criminal conduct. *See* Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, The Sentencing Project (November 2018).[1]

**(3) The kinds of sentences available;**

Dr. Otellin submits that factors exist that both authorize and warrant a sentence below the advisory Guideline.

**(4) The kinds of sentence and the [Guideline] sentencing range;**

Here, the factors set forth above counsel in favor of a downward variance.

---

[1] Available online at: https://www.sentencingproject.org/app/uploads/2022/08/UMKC-Law-Review-Scale-of-Punishment.pdf (last visited December 16, 2024).

**(5) Any pertinent policy statement;**

The requested sentence is not precluded by any pertinent policy statement.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and**

The requested variance is warranted.

**(7) The need to provide restitution to any victims of the offense.**

Restitution is not at issue.

### III.   CONCLUSION

WHEREFORE, for the reasons set forth herein, Alexander Otellin requests that the Court vary downward and impose a sentence below the advisory Guideline range of 30-37 months.  Counsel does not intend to call any witnesses and anticipates that the sentencing hearing will last approximately 30 minutes.

Respectfully submitted this 16th day of December, 2024.

**ALEXANDER OTELLIN, M.D.**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

s/Clint Carte
Clint Carte, Bar Number: 12054
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone:  (304) 347-3350
Facsimile:  (304) 347-3356
E-mail: Clint_Carte@fd.org

5